Chief Howard, if I may reserve two minutes for rebuttal. Yes. In this case, the question is whether the defendant is entitled to qualified immunity. A government official has a legal entitlement to qualified immunity unless the law is clearly established that his actions are recognizant to the Constitution. There are two ways for the plaintiff to meet, in this case, the burden of establishing that the law was clearly established. One is that there is controlling case law, that is to say, from the United States Supreme Court or here the First Circuit, which establishes that, or that there is a robust consensus of persuasive authority that places the constitutional question beyond that. Well, that's true. It's a statement of black letter law. But the first of those two prongs, the Supreme Court has made it clear that controlling authority doesn't mean that there's a case on all fours or a case squarely in point. That there can be cases which, after the guiding principles are extracted from the Supreme Court case law and applied to the facts, produce a result that is clear or obvious. That's absolutely correct, Your Honor, and I have two responses to that. First of all, and that's the second way of establishing clearly established, is whether even in the absence of guiding case law, the constitutional violation is obvious. And that's the Hope versus Pelser type of analysis that the district court cited and didn't specifically rely on, but said that there was nothing in the most recent Supreme Court pronouncement that deviated from or eschewed the wholly in Hope. But I think it's pretty clear here that we're not talking about a so-called run of the mill or an obvious whole type constitutional issue. So then coming back, I think, to your more specific question, and that really seemed to be, to a certain extent, the focus of the lower court's decision. It talked about what is similar. It gave Webster's dictionary definitions as to what is similar, is that what is required, versus nearly identical. What the Supreme Court said in White versus Pauley, and this harkens all the way back to Anderson versus Creighton, where the court first said general pronouncements don't count. The contours of the right have to be sufficiently clear that a government official would know that what he or she is doing is constitutionally repugnant and most recently. And candidly, I think the Supreme Court seemed to be a bit frustrated in White. It called out the Ninth Circuit in particular, but it said that it had on no fewer than five occasions recently reversed lower courts for applying these principles at too general of a level. And its language was the facts had to be particularized to the case. I wonder if I could ask you a more narrow question. This is an interlocutory appeal, and the law that would justify that is very particular. My question is, are you really, in pursuing this interlocutory appeal, are you really accepting the plaintiff's version of the facts here? And I'm specifically asking you about what I think is perhaps a dispute, not about a fact, but an inference to be drawn from the facts as to whether Officer Mangino recently believed that about six minutes before the fatal encounter, that Mr. McKinney had been pointing his gun at him. As I understand it, the plaintiff takes the position that that was not a reasonable belief. You seem to take the position that it was a reasonable belief. Am I correct? The district court said on four separate occasions in its order that it was a reasonable belief. Yeah, but our view of the district court's judgment here is de novo to the extent we review it at all. And I have the same concern Judge Luperce has so perspicaciously identified. Isn't it so that there are inferences that were drawn by the district court here which you don't accept, at least in your brief? Absolutely not, Your Honor. This case falls outside of the Penn v. Escorcio and the more recent, I think, the Gogan analysis of this court where interlocutory appeals were dismissed for lack of jurisdiction. Two points here. First of all, the district court has made findings based on inferences about issues such as the immediacy of the danger. You argue in your brief that that's unreasonable, that the danger was clear, palpable, and immediate. That's because you're drawing, whether you say you're doing it or not, whether you admit you're doing it or not, you're drawing a set of inferences from the facts that is different than the inference that Judge Levy drew from those same facts. I don't agree with that, Your Honor. I think the question here is whether… I mean, I've read your brief and you certainly don't accept the inferences that he drew. If we look at the undisputed facts, a policeman goes into a house, a man is armed with a gun… A suicidal man. A suicidal man is armed with a gun. The officers don't engage him, but they leave the house. The man comes out of the house. He's seen on video, which is undisputed, following another officer around the corner of the house. He's given three more warnings to drop the weapon, and what does he do? He raises it and draws it down. Even if we didn't accept Defendant Mancino's position that he reasonably believed that gun was pointed at him, there's more. In the ensuing six minutes, he is given information from Officer Fournier, who's parked down at the end of the cul-de-sac, beating number one… I'm sorry to interrupt, but I don't want to leave this point. It seems to me that in representing your client, it must be your position that the decision that he made to fire that shot was to some extent informed of what had happened six minutes earlier, when, I think it would be your position, he reasonably believed that six minutes earlier, that gun had been pointed at him. Now, it may be that, and I guess you are prepared to agree, that as Mr. McKinney was walking down that driveway, the gun was dangling at his side. But nevertheless, given what had happened six minutes earlier, when Officer Mancino reasonably believed that the gun was pointed at him, that had to inform that split-second decision that he made. And if that's so, it seems to me there is a dispute about a critical legal fact as to whether he did or did not reasonably believe that. It seems to me that the way the district court dealt with that, if I understand this decision, it took the position that that dispute about whether Officer Mancino could reasonably believe that the gun was pointed at him was somehow not material to the analysis. It just didn't matter. I frankly have problems with that. That seems to me to be very material, and I think you do believe it was very material. Actually, I was just going to say, first of all, I'm glad that you recognize, Judge Lopez, that Officer Mancino was faced with tense, rapidly evolving circumstances and split decisions. That's your position. Well, and I'm glad to hear that the courts echoed that. More to the point, however, we can take the pointing of the gun and, more importantly, Officer Mancino's belief out of the equation entirely. If we say that he didn't reasonably believe that gun was pointed at him, there's enough… Six minutes earlier. Ever. Let's just pretend that he's testified, no, I didn't think he pointed it at me. There's enough… There is no case that informs a police officer that if you've been in a house with a guy who's got a gun, you order him to drop it, he defies those commands, you leave the house in an attempt to disengage, he follows you out of the house, he follows one of your fellow officers around a corner, and then he's walking with a loaded gun, and it doesn't matter if it's dangling at his side or wherever, down the driveway to you with a civilian in your police cruiser, there's no case. There shouldn't have been there. That's immaterial and it just simply doesn't matter. And there are plenty of cases that say it's precipitate for an officer to use deadly force in the type of situation you describe when there is an opportunity to give a warning that deadly force will be used if commands aren't obeyed and no such warning is given. There were five warnings in this case. No, there was never a warning that if you don't obey our commands, if you don't drop the gun, we will shoot, we will use deadly force. There was nothing like that. I don't believe there's a case from this court or the Supreme Court or a robust consensus of cases from other courts that say what the content of the warning has to be. Telling somebody five times to drop a gun when you're a police officer, I think it's pretty clean. Wait a second. You're insisting the warnings were given. It's understated. The point of view is that there were no warnings given. You're now, aren't you once again demonstrating that you are not accepting the plaintiff's version of this case? Absolutely not. I'm respectfully taking issue with Judge Selya's position that commands to drop the gun aren't warnings. And what I'm saying is there's no case that says what the officer actually has to say. The plaintiffs will agree. I'm quite certain because the record is undisputed that there were five commands to drop the weapon. Mr. Marchese, I've confused myself a little bit about the undisputed facts. Can you tell me when the sheriff's deputy, your client, showed up on the scene in relation to the other two officers being in the house and retreating from the house? Certainly, Your Honor. And perhaps I confused the facts as opposed to you. I'm just trying to find that out. Yes. So the two officers from the town of Wyndham arrived and my client arrived probably within 30 seconds afterwards. They were all outside of the house initially at the same time. The two Wyndham police officers entered the garage and the house through a garage into the house door. They opened the front door and had my client come in through the actual front door of the house from the true exterior, not from the garage, into the hallway. Got it. Okay. Thank you. Counsel? Just quickly. The videos that are part of the record, I will acknowledge that I was able to watch one and it didn't seem to be that illuminating. I tried another one and it didn't work. That may just be a technical problem at our end. How important are the view of those videos to our understanding of what was happening there? Truthfully, I don't think they are because the plaintiff, the appellee, I believe will concede that five warnings were given and that after there was a group of two in the house and then three outside the house and you could hear them but you don't need to hear them because they'll concede that there were three warnings, drop the gun, drop the gun, drop the gun, and I believe they'll concede. And you do see this on the video. The gun comes up and comes down at that point. The other thing that it shows, and again I think they'll concede it, is that when Mr. McKinney came out of the house he followed Officer Cook around the side of the house which certainly enters into the reasonableness of Defendant Mangino's calculus with respect to the possibility that there was a deadly force imminent that he had to protect himself and his civilian rival against. Does that answer your question? Thank you. Thank you. Good morning. May it please the Court. Jameisa Drake on behalf of Mrs. McKinney. It's very difficult to engage in a legal analysis of this case when the parties don't agree on the facts, they don't agree on the inferences that follow from the facts, they don't even agree on how this Court should view the facts. Deputy Mangino and his fellow officers gave a command to Stephen to drop the gun. He was never given a warning that if he didn't drop the gun, force of some degree would be employed against him. We disagree that Stephen followed Officer Cook. We believe the video shows that Stephen was unaware of Officer Cook's position. So is this the video that shows him walking in front of the garage? Yes. Okay. Okay. We disagree about whether Officer Mangino reasonably believed that Stephen ever pointed the gun in his direction, and we disagree about whether there was an actual warning, a statement about consequences that might follow from the failure to disarm moments before, seconds before the fatal shot was fired. Everyone is in agreement that these are facts that are important to the analysis. Clearly established law says that whether a warning was given is something that a court is to take into consideration when considering the objective reasonableness of the encounter. And as Your Honor points out, whether Deputy Mangino reasonably believed that a gun was pointed in his direction is essential to the question of whether there was a true threatening immediate situation. And without an agreement about how this court is supposed to view those facts, it's very difficult to engage in a legal analysis. What the defendant has done is attempted to cleanse the record and prolong the possibility of a trial to the point where it becomes indistinguishable with what actually happened on the ground. What actually happened, what the video portrays, is that moments, and unfortunately the end part is not on the video, but the parties are in agreement, that moments before he was killed, Stephen was walking nonchalantly down the driveway with a gun dangling at his side. And when Stephen was shot, the gun was still dangling at his side. The police ordered Stephen six times, ordered Stephen to disarm six minutes before they shot him, but in the interim, they did nothing to ensure his compliance. They just watched him walk in and out of his house. Stephen made no verbal threats. Excuse me, Counsel, with respect to the portion of this event when Mr. McKinney is walking down the driveway, is there an agreement that no warning of any kind was given, such as drop the gun, something as simple as drop the gun? When you say there is an agreement that he was told to drop the gun, that's back six minutes earlier? Is that what you're talking about? Correct. There is a dispute, the parties dispute, whether Officer Mangino ever gave a command for Stephen to drop the gun. I'm talking tenths of a second before the fatal shot was fired. I'm sorry, can you go ahead and finish? Deputy Mangino contends that such a command was given, but no such command is audible on the recording. And we anticipate that this will be a very hotly contested issue at trial, which will involve expert testimony on whether such a command were given would have been captured on the audio. As Garner makes clear, whether a warning was given and whether there was an opportunity to give a warning is integral to the reasonableness calculus. And so this is yet another fact where there is a dispute. Now, it was removed from the analysis. The defendant agreed that we would assume that fact in the plaintiff's favor. So that is one instance, that is the only instance in this record where we are viewing the record in the proper light. But our position is that, nevertheless, that is an important fact. That fact is crucial to the legal analysis, and therefore it can't be one that is removed. Now, I know that you are, of course, defending the decision of the District Court, but you're defending both that we shouldn't be even considering it, given its interlocutory nature, but you're also defending it on the merits. The District Court seemed to take the view that, even if there is a dispute about whether Officer Mangino, six minutes earlier, reasonably believed that the gun was being pointed at him, that that doesn't matter. It is not material to the qualified immunity analysis. Do you understand that to be the District Court's position? Yes. I would disagree with the defendant to the extent that he maintains that the District Court made a finding in that regard. The way I read the order is that the District Court was willing to assume, for the sake of argument, that Mangino reasonably believed the gun was pointed in his direction. Nevertheless, waiting six minutes was too long to then reasonably employ deadly force. But then the District Court is not, that's not the plaintiff's view. The plaintiff's view is that, in terms of the inference to be drawn, that Officer Mangino could not have reasonably believed, given what happened six minutes earlier, that the gun was not pointed at him. And so the District Court is not doing what it's supposed to do on summary judgment. But it gets around that, I think, by saying that fact is simply not material to the analysis. Is that your understanding of what the District Court did? Yes. Our primary argument, to be clear, our primary argument is that Deputy Mangino's belief about the gun pointing was not objectively reasonable. Our fallback argument is that even assuming he reasonably believed that, nevertheless, as a matter of law, that does not justify the use of deadly force. There is some precedent. Why would that be so if you accept what the video shows about the raising of the gun and lowering of the gun as being enough to create a reasonable belief that he was in danger, objectively reasonable, but it doesn't really matter what he believed or not. And then isn't it undisputed that the deceased was later walking toward the officer's cruiser with the gun in his hand and came within about 60 feet of it? To be clear, we are accepting for the sake of argument that that's the reasonable belief. But the position is that simply raising a gun in the air, the gun pointed upwards in the air, but then at the crucial moment, the gun dangling down. But at that point, the deputy has been notified that he's walking toward the car, that he's coming toward him, and he's roughly, what, 20 yards away? He's 70 feet, correct. So, right, our position is that the six-minute interval where no attempt, no other attempt was made to even communicate with Stephen, is evidence that this was not an immediate, a fast, rapidly-paced situation. And by Deputy Mangino's own deposition testimony, when he's walking down the driveway, he's not doing so in a threatening manner. He's doing so in a manner that is nonchalant, and the gun is not pointed anywhere other than at the ground where it was pointed. But how long does it take to raise it and shoot? He's now within about 20 yards of him. Is that not objectively a threatening situation? No, not under the case law. The case law makes very clear, and these are sort of the clearly established guideposts, that a homeowner's lawful possession of a gun in the threshold of his home or within the curtilage of his property is not per se threatening under the circumstances. And then, of course, we would add to the analysis all of these other disputed things, which is the fact that he failed to disarm is not evidence of a willful disobedience on his part, but is evidence of his disturbed mental state. And then we have to consider whether he disobeyed one final warning, whether that warning was given. We would concede that if there was a warning that was given seconds before the fatal shot was fired, this would be a closer case. We don't think qualified immunity would apply, but we would acknowledge it would be a closer case. All of this to say... Where was the deputy at that point? I don't know exactly because... The record indicates that he was behind his car. That's correct. He's behind his car, although when he fires the fatal shot, he moves to the front of the vehicle and squares off. If he gives the warning at that point, he gives up his location... Correct. ...to somebody who's carrying a gun who is clearly disturbed. Correct. I don't dispute that this becomes a closer case. Not a losing case, but a closer case. But this is exactly the point. This is proving our fundamental point, which is that these are questions for the jury. At bottom, defendant's argument is that the district court didn't appreciate the immediacy of the threat, the threatening nature of the encounter, but then he pulls out from this court's consideration, either that or he puts in, but not in a way that's faithful to the standard of review, all of these contested facts. Of course. Thank you. Let me make sure I understand the significance of something I thought I heard you say. I thought I heard you say that you were prepared to accept for the sake of argument that Officer Mangino reasonably believed that on that earlier instance where the gun is seen in Mr. McKinney's hand, it's in the air, that the gun was pointed at him. Did you say that? No, Your Honor. To be clear, our primary position is that that is a contested issue of material fact. Because it seems to me that the analysis changes dramatically, and the jury might well think it changes dramatically if the officer could have believed six minutes earlier that the gun had been pointed at him because that belief arguably, I guess that would be argument to a jury, could well reasonably inform his belief about what might happen to him as Mr. McKinney is walking down that driveway. So that strikes me as a critical fact, and I thought, just again to be clear, that you believe there is an important dispute about the reasonableness of that belief. Is that correct? Yes. Our position is not only that it's contested, but that it's material, and because of its materiality. The judge thought it was non-material. You have argued here this morning that even accepting the judge's view of that, it doesn't matter. As a matter of law, correct. So she did take that position today. We are in agreement with Judge Levy that were we, for the sake of argument, to infer that fact in the light most favorable to the defendant, it still wouldn't matter because there is this prolonged six-minute interval before the deadly shot is fired, which betrays the notion that this was a truly fast-paced, genuinely threatening situation. Thank you. Apparently the plaintiff believes that Mr. Mangino should have shot Mr. McKinney immediately when he believed the gun was pointed at him as opposed to affording him some opportunity to direct. That's a pretty sly remark, Mr. Marchese. That's not so. We're dealing here with a calculus. Yes, Your Honor, but she's twice said. The immediacy of the threat and the efficacy of possible remedial action short of lethal force, those are the two integers. Absolutely. You've got a complex set of facts. The district court has looked at that set of facts, drawn a bunch of inferences, the critical inferences being inferences you don't like, and said that there was not enough immediacy and enough chance of efficacy of non-deadly force that qualified immunity does not attach as a matter of law. And my question to you is the same as it was at the start of the argument. How can we look at that decision the way you want us to without drawing inferences from the facts contrary to the inferences drawn by the district court? Yes, Your Honor. Let me say three things. First of all, if my remark was perceived as sly, I apologize. It wasn't intended to be. Counsel at least two times said that the warning should have been given within seconds and that somehow by weighing that weighs against the reasonable belief, which led me to the... No, I think what you said is that it weighs against the reasonable belief when no warning is given in the time frame immediately before the fatal shot. So let me address this coming literally backwards. Let's take out of the equation. Let's assume that the gun, that Mangino never believed the gun was pointed at him. And let's assume, since the plaintiff says it's contested, that Kenny was just walking around and not following Officer Cook. So the undisputed facts would be that the man has a loaded gun in the house. He's given two warnings to drop, but he doesn't. He is known to be suicidal, which I think is significant in terms of what's in the officer's mind. He comes out of the house. He's given three more warnings. He doesn't drop them, and he's now advancing on the officer. Six minutes later. Six minutes later. Absolutely, Your Honor. And after wandering around with the gun dangling from his hand for six minutes with no threatening action, no one being hurt, nothing of that sort. It's undisputed that within that six minutes, officer forwarding a radio to Mangino, he might be pointing that, and then be careful. He might be pointing that. But whether he was pointing or not is a disputed fact, which has to be taken in favor of the plaintiff. I don't agree with that, Your Honor, because it's what is reasonably believed. So if he gets the information, whether he's pointing it in fact doesn't matter. It's the information that the officer has to process. So those facts are undisputed. There's a loaded gun in the house. There's two commands given to drop it. They're disobeyed. There are three more commands given outside of the house. In response to one of those, the gun is raised, whether or not it's pointed. That's undisputed. And the man's now walking down the driveway, potentially emotionally disturbed, with a loaded gun towards an officer and a civilian. Those are undisputed. On those facts, I pose this question, where is the case? Well, the robust consensus of cases that tells a police officer that it would be unconstitutional to employ deadly force, and I would add to that the overlay that the officer is entitled to make reasonable mistakes so long as he wasn't plainly incompetent or knowingly violating the law. I would ask that this court remand with an order that the assembly judgment be entered and the district court's decision be reversed. Thank you, Bob. Thank you.